UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID G. SPARKS,<br>   Plaintiff, | )<br>)<br>) | |
| vs. | ) | No. 20-4068 |
| WEXFORD HEALTH<br>SOURCES, INC., et. al.,<br>   Defendants. | )<br>)<br>)<br>) | |

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for merit review of the Plaintiff's complaint. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff, a *pro se* prisoner, claims Defendants Wexford Health Sources, Nurse Stephanie Steele, Medical Director Dr. Elk, and Nurse Dawn violated his constitutional rights at Hill Correctional Center. Plaintiff says the Defendants were deliberately indifferent to his serious medical condition in violation of his Eighth Amendment rights.

On December 27, 2018, Plaintiff fell while working in the dietary unit, cutting his head and injuring his arm. Plaintiff was immediately taken to the Health Care Unit

(HCU), but Plaintiff says the medical provider, Wexford, did not have a doctor assigned to the correctional center.  Instead, Plaintiff saw Defendant Nurse Steele who sutured Plaintiff's cut with eight stitches, wrapped his arm with an Ace Bandage, and ordered x-rays.  The next day, x-rays revealed Plaintiff's forearm/wrist was broken.  Plaintiff says the Nurse failed to order any of the necessary permits or restrictions to protect his wrist.

For instance, Plaintiff was ordered back to work and he continued to clean pots and pans.  When Plaintiff complained of pain and difficulty doing his job, he was threatened with disciplinary action.

In addition, Defendant Nurse Steele did not order a medical hold, so Plaintiff was transferred to Shawnee Correctional Center on January 9, 2019 for a court writ. Plaintiff says he was handcuffed during the transport and the 11-hour bus ride home caused additional injury and pain.

Plaintiff apparently did not know his arm was broken until he returned to Hill Correctional Center approximately two weeks later.  A Nurse informed Plaintiff of the results of the x-ray and told Plaintiff his stiches were infected. The nurse removed the stiches and provided a cardboard splint for his arm.

On March 1, 2019, Plaintiff was sent to Cottage Hospital to see Dr. Shierer.  The doctor again x-rayed Plaintiffs' arm and "became upset on how long it took for him to be seen." (Comp, p. 5). The doctor said Plaintiff's wrist had improperly healed and he referred Plaintiff to a hand specialist for further treatment.  The doctor also ordered a therapeutic cuff, right arm cast, low bunk permit, and low gallery permit.

Plaintiff was again transferred for a Court hearing on March 6, 2019, and an unknown Correctional Officer refused to abide by Plaintiff's medical permits. The officer who transported Plaintiff back to the Correctional Center used different cuffs to accommodate Plaintiff's cast, but an unknown lieutenant pulled Plaintiff out of line to inspect his cast and squeezed Plaintiff's arm hard enough to cause pain.

Plaintiff met with a hand surgeon on March 27, 2019. The doctor explained the surgery to Plaintiff. Surgery was ultimately scheduled for May 20, 2019, five months after Plaintiff injured his arm. Plaintiff says the doctor had to cut his bone and insert screws and plates to repair the damage.

On June 21, 2019, a different doctor removed Plaintiff's cast. Plaintiff says during the procedure, Plaintiff's "arm fracture split again" causing excruciating pain. (Comp., p. 6). The doctor added a fiberglass cast to Plaintiff's arm and scheduled a follow-up visit.

Plaintiff claims Wexford delayed any additional surgery for another four months. Plaintiff says the new Medical Director, Dr. Elk, held several collegial reviews attempting to gain approval, but Wexford did not sign off until October 2019.

The second surgery occurred on November 6, 2019 and Plaintiff says "13 additional screws were installed in his forearm to hold it in place." (Comp., p. 6).

Plaintiff was released back to Hill Correctional Center the next day with a prescription for the pain medication, Norco, three times a day. Plaintiff says Defendant Nurse Dawn refused to provide the prescription leaving him in extreme pain. When Plaintiff continued to complain of pain, Defendant Dr. Elk kicked him out of HCU.

Plaintiff immediately submitted a sick call slip and saw Defendant Nurse Dawn on November 12, 2019. Nonetheless, both the Nurse and Defendant Dr. Elk continued to refuse Plaintiff any pain medication besides Ibuprofen. Plaintiff also says he was charged for the mediation, but he does not claim he was unable to pay the $5 copayment. *See Hudgins v. DeBruyn,* 922 F.Supp. 144, 150–52 (S.D.Ind.1996)(prisoner co-payment plan does not violate the Eighth Amendment); *Martin v. Debruyn,* 880 F.Supp. 610, 615 (N.D.Ind.1995)(the Eighth Amendment guarantees prisoners receive necessary medical care; it does not guarantee free medical care).

Plaintiff met again with the hand surgeon on February 4, 2020 and reported he was still suffering in pain. The surgeon told Plaintiff he would likely always have some pain, but if it continued after six months, they could fuse the wrist in place to see if that alleviated Plaintiff's pain.

Plaintiff's complaint ends with two counts alleging the individual Defendants were deliberately indifferent to his serious medical condition, and one count alleging Wexford Health Sources was deliberately indifferent based on it's cost-cutting policies which lead to delays in surgery and its failure to provide qualified, on-site medical staff. The Court notes Plaintiff does not need to allege two separate claims of deliberate indifference against the individual Defendants. Plaintiff has adequately alleged each of the named Defendants was deliberately indifferent when they delayed care or denied care for his forearm/wrist injury.

While Plaintiff has mentioned other issues with correctional staff members failing to abide by his medical permits, he has not identified these individuals as

4

Defendants or even John Doe Defendants. Therefore, it appears Plaintiff only intended to file his complaint against the named medical providers. If this is incorrect, Plaintiff must file a motion to clarify within 21 days indicating specifically which additional Defendants he intended to sue and why.

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges Defendants Wexford Health Sources, Nurse Stephanie Steele, Medical Director Dr. Elk, and Nurse Dawn violated his Eighth Amendment rights at Hill Correctional Center when they were deliberately indifferent to his serious forearm/wrist injury by delaying or denying needed medical care. The claim is stated against Defendants Steele, Elk, and Dawn in their individual capacities, and against Wexford in its official capacity. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will

file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.  The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Attempt service on Defendants pursuant to the standard procedures; 2) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 3) enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 18th day of June, 2020.

                                          s/ James E. Shadid
                    _____
                                          JAMES E. SHADID
                               UNITED STATES DISTRICT JUDGE